**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| **LARRY R. MILBURN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )  **Case No. 1:05CV50 MLM** |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **COMMISIONER OF** | ) |
| **SOCIAL SECURITY** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart ("Defendant") denying the applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § § 401 et seq., and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq., filed by Plaintiff Larry R. Milburn ("Plaintiff"). Plaintiff has filed a Brief in Support of the Complaint and a Supplemental Brief. Doc. 16, Doc. 17. Defendant has filed a Brief in Support of the Answer. Doc. 21. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 8.

## I.
## PROCEDURAL HISTORY

On October 18, 2001, Plaintiff filed an application for Disability Insurance Benefits and SSI, alleging a disability onset date of October 4, 2001. (Tr. 59-61). Plaintiff's applications were denied initially. (Tr. 20, 38-42). Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ") which was held on October 29, 2004. (Tr. at 142-88).[1] At the hearing Plaintiff amended the onset date of his disability from October 4, 2001, to July 9, 2003. Plaintiff's applications were denied by ALJ Robert Ritter by decision dated November 26, 2004.[2] (Tr. 10-19). On March 3, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 2-3). As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ADMINISTRATIVE LAW JUDGE

**Plaintiff's Testimony:**

Plaintiff testified that, at the time of the hearing, he was fifty-six years old, was 6' tall, and weighed 224 pounds. (Tr. 150). Plaintiff testified that he completed the 12th grade of high school; that he had no specialized training; and that he could read, write, add, subtract, multiply, divide, tell time and make change. (Tr. 149).

Plaintiff testified that he had not worked since July 2002, when he was a toolbox assembler at Waterloo; that he had difficulty working due to pain from his shoulder and right arm;

---

[1]      Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. See 20 C.F.R. § § 404.906 and 404.966 (2002). These modifications include, among other things, the elimination of the reconsideration step and at times, the elimination of the Appeals Council review step in the administrative appeals process. See id. Therefore, Plaintiff's appeal in this case proceeded directly from his initial denial of benefits to the administrative law judge level.

[2]      Plaintiff had previously filed applications for disability and SSI benefits under the Social Security Act on October 18, 2001. (Tr. 10). His application was denied by an ALJ on July 8, 2003, and the Appeals Council denied review of the case on September 5, 2003. (Tr. 10). The current ALJ found no basis for reopening the prior application. (Tr. 10). Thus, the ALJ's prior decision operates as *res judicata* and represents a final determination of Plaintiff's allegation of disability through the date of the prior ALJ's decision. Califano v. Sanders, 430 U.S. 99, 107-09 (1977).

that the heaviest thing he had to lift as a toolbox assembler was 40 pounds; and that he opted for a lay-off. (Tr. at 155). Plaintiff also testified that before working for Waterloo he worked twenty-two and a half years for Bachelor Electric, first as an assembler and later as a supervisor; that he injured his back while working at Bachelor Electric in 1994; that as a result had back surgery; that he was out of work for almost a year after back surgery; that he returned to Bachelor Electric as a supervisor from 1995 to 1999; that when he worked as a supervisor when he reached for things he would have to stop, walk it off, and then come back to the task; and that he was fired from Bachelor in 1999 for leaving the premises during working hours. As a supervisor, Plaintiff said he did not have to often perform labor and that he was constantly on his feet and would occasionally have to lift items weighing up to 30 pounds. (Tr. 153-59).

Plaintiff testified that, at the time of the hearing, he suffered from emphysema; that he often had trouble breathing; and that he has to sit down and rest after walking approximately 200 yards to retrieve his mail. (Tr. 155). Plaintiff also testified that he has lost a lot of hearing in his left ear; that he had a constant ringing in his ears resulting from a hunting accident where a shotgun was fired right next to his head; that the ringing is often loud enough to keep him awake at night; that he does not wear hearing aids; that the doctor told him that hearing aids would not help; and that he was able to hear the proceedings before the ALJ with the exception of one question. (Tr. 155, 168). Plaintiff further testified that, at the time of the hearing, he suffered from pain in the lower right part of his back down to his right leg; that he did not take prescription medicine for the pain because it caused constipation which put more pressure on his back and worsened his pain; that he uses Advil and/or a heating pad several times a day to treat the pain; that about three times a day he has to lay down and use a heating pad; and that at the time of the hearing his pain was

about a six on a scale of one to ten. (Tr. 156-57, 169). Plaintiff said that he does not wear any kind of a brace to support his back; that he cannot wear a belt because it bothers him; that he cannot stand to have something tight on his back; and that after surgery he did not have physical therapy for his back. (Tr. 173-74). In regard to his back pain, Plaintiff testified that he did not re-injure his back in the two years preceding the hearing; that he was happy with the result of the surgery which he had; that he gradually has become worse since the surgery; that Plaintiff was told by Dr. Davis that the only thing that could be done is for him to have another surgery and that surgery would make his back weaker; and that he has not been back to this doctor for surgery. (Tr. 174-76).

Plaintiff testified that he has carpal tunnel mainly in his right wrist; that it was recommended that he have carpal tunnel surgery; that he did not have the surgery because "they couldn't guarantee it"; and that while at Bachelor Electric this affected him so that he could not pick up a lot of things. (Tr. 154, 172). He also said that he has arthritis in his arm and shoulder; that this arthritis causes him pain all the time; and that he "can't hardly raise it. ... It feels like it's going to fall off." (Tr. at 154). Plaintiff further testified he was unable to lay in one position for an extended period of time without pain in his back and shoulder, thus making sleep difficult. (Tr. 158). He testified that in a normal day, when he does not "do much" his pain is "not so bad" and that when he repaired a bicycle chain, he was "down on [his] back for three days in bed." (Tr. 170). Plaintiff further said that he often has to lay down during the day; that laying in one position for an extended period of time causes his back and/or shoulder to ache; and that he has difficulty sleeping. (Tr. 158). He said that he passes his days doing as little as possible; that he has a recliner; that he lays in the recliner during a normal day for "an hour or so" and then he gets up

and walks around; that in a typical day he spends three or four hours in the recliner; and that he usually has to lie in bed once a day; and that he spends a couple of hours each day lying down. (Tr. 170-71). Plaintiff also testified that during a typical day he watches television and reads; that he has tried to do a little painting; and that when he paints his hands go numb after a few minutes. (Tr. 172).

Plaintiff said that the heaviest thing he lift in the thirty days prior to the hearing was a gallon of milk and that lifting the milk did not hurt "too bad." (Tr. 177).

**Testimony of the Vocational Expert:**

Dr. Jeffrey Francis Magrowski testified as a Vocational Expert ("VE"). The VE testified that if the Plaintiff's subjective complaints of pain and discomfort were credible and accurate that the Plaintiff would be unable to perform any job. (Tr. 179). The ALJ then presented a hypothetical to the VE under which hypothetical Plaintiff had degenerative joint disease of the lumbar spine and right pinky finger arthritis, was able to lift in a medium range of fifty pounds occasionally and twenty pounds frequently, could stand, sit, and walk about 6 hours in an 8-hour work day, was unable to climb ropes, scaffolding, or ladders, and was unable to engage in work where balancing of the body is critical. Plaintiff's attorney interrupted the ALJ's posing of the hypothetical and requested that the ALJ to adopt the residual functional capacity assessment conducted by Dr. Kirk Bowman. (Tr. 180). The ALJ then incorporated the more restrictive limitations of lifting only twenty pounds occasionally and ten pounds frequently, no more than occasional stooping, kneeling, crouching and crawling, and avoidance of concentrative exposure to extreme cold and vibration of the body into a subsequent hypothetical. In response to this hypothetical, the VE found Plaintiff would be unable to perform his past relevant work as a

production supervisor as he performed this job but that he would be able to perform it as it is generally performed in the national economy. (Tr. 181).

The VE noted the Plaintiff previously had done payroll, accident reports, conducted blueprint reading classes, trained people on operating machines, and supervised from 40 to 600 people. The VE stated that Plaintiff could perform such jobs which exist in excess of 16,000 in Missouri and 700,000 in the national economy. (Tr. 182).

The ALJ posed a third hypothetical pursuant to which Plaintiff had degenerative joint disease of the lumbar spine and of the right little finger, emphysema, carpal tunnel syndrome, hearing problems, tendonitis of the left elbow, was limited to lifting and carrying 20 pounds occasionally and ten pounds frequently, could sit, stand and walk about 6 hours in an 8-hour work day, could never climb ladders, ropes, and scaffolding, could not engage in work which requires balancing, could occasionally kneel, crouch, and crawl, and must avoid concentrative exposure to extreme cold and vibration of the body. In regard to this third hypothetical, the VE stated his response was the same as it was to the second hypothetical which is that Plaintiff could not perform his production supervisor position as described but could perform this job as it is performed in the national economy.

The ALJ then posed a fourth hypothetical imposing limitations on Plaintiff's breathing capacity despite his normal pulmonary function studies. Under this fourth hypothetical Plaintiff would have had to avoid concentrated exposure to respiratory irritants such as high concentrations of dust and gases, and poor ventilation. The VE responded that his answers to this fourth hypothetical would again not change, as the breathing restrictions would not impact his ability to perform production supervisory duties. (Tr. 183-84).

The ALJ presented a fifth hypothetical to the VE which limited Plaintiff to sedentary lifting and carrying. Under this hypothetical, the VE stated the Plaintiff would be unable to perform the duties of a production supervisor. The ALJ then asked if the Plaintiff would be able to transfer any of his skills to sedentary work or positions. The VE replied that Plaintiff had several skills that were transferable to sedentary work including the intellectual skills of reading, interpreting blueprints, teaching individuals to operate machinery, and supervising them. The VE noted that Plaintiff operated a forklift, scales, calipers, micrometers, a computer, did payroll and accident reports, trained employees, and supervised from 40 to 600 people. (Tr. 184). The VE concluded these skills would allow Plaintiff to work as an inspector, cashier, or order clerk and stated that, in aggregate, there were 28,000 such jobs in the state of Missouri. (Tr. 184-85).

The ALJ added to his fifth hypothetical of sedentary work the further restrictions that Plaintiff would have to alternate between sitting and standing positions. The VE responded that Plaintiff would still be able to perform the sedentary positions already stated. The requirement of sitting and standing would not hinder the Plaintiff's ability to perform these duties. (Tr. 185-86).

The VE further testified that if Plaintiff had to lay down for at least one hour at time at least three times a week that there would be no jobs which Plaintiff could maintain. (Tr. 186).

### III.
### MEDICAL RECORDS

Office notes of Darwin Davis, M.D., dated November 14, 2000, reflect that Plaintiff had a long history of back, left elbow, and right fifth digit pain and that he had a history of back surgery. Upon examination, Dr. Davis reported that Plaintiff had some tenderness of the left

elbow and right fifth finger and tenderness to palpitation in his back; that Plaintiff's straight leg raising test was negative; and that X-rays of Plaintiff's back revealed significant degenerative joint disease. Dr. Davis' assessment was back pain due to arthritis, lateral epicondylitis, and finger pain. Plaintiff was prescribed medication,[3] given an elbow splint, and advised to follow-up in one month. (Tr. 138).

MRI reports dated November 14, 2000, reflect that Plaintiff's left elbow was normal with no fracture, dislocation, or significant degenerative change seen; in regard to his lumbar spine, there was moderate degenerative arthritis, mild scoliosis, and grade I spondyloslisthesis of L5 on S1 with possible pars defect; and in regard to his right pinky finger, there was no fracture or significant degenerative change. (Tr. 140-41).

Dr. Davis's records reflect that he saw Plaintiff in January 2001[4] at which time Plaintiff complained of numbness in his right hand with throbbing at night and multiple areas of pain. Dr. Davis's records further reflect that he diagnosed Plaintiff with carpel tunnel syndrome and advised Plaintiff to wear a "cock-up wrist splint" and to take Vioxx. (Tr. 137).

Records of Dr. Davis further reflect that Plaintiff was seen on July 27, 2001, at which time Plaintiff had a spot on his tongue (Tr. 136) and that returned to Dr. Davis on October 9, 2001, to discuss getting disability benefits. Also, on this later date Plaintiff reported that his back hurt constantly and that he could not work due to shortness of breath and Dr. Davis noted that Plaintiff had tenderness and decreased range of motion in his lower back. (Tr. 135).

Pulmonary function testing (PFT) of October 9, 2001, revealed an FVC of 4.75 (91% of

---

[3]     The name of the medication is not legible.

[4]     The exact date is not legible.

the predicted level) and an FEV1 of 3. 79 (93% of the predicted level). [5] (Tr. 142). A chest X-ray of this date revealed no acute cardiopulmonary process and a heart within normal limits. (Tr. 139).

On January 28, 2002, Kirk Bowman, Jr., M.D., a state agency medical consultant, completed a Physical Residual Functional Capacity ("RFC") Assessment of Plaintiff. Dr. Bowman reported that he reviewed Plaintiff's medical records including reports of Dr. Davis and Plaintiff's X-rays. Dr. Bowman opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; that he could stand, walk and sit about six hours in an 8-hour workday; that he had unlimited ability to push and pull; that he could occasionally stoop and climb ladders, ropes, and scaffolds; and that he could frequently perform other postural limitations. Dr. Bowman found no manipulative, visual, communicative or environmental limitations. (Tr. 275).

Kashif Hussain, M.D., performed a consultative examination of Plaintiff on November 25, 2003. Dr. Hussain's notes reflect that Plaintiff reported that he had back and shoulder pain since 1995; that he could lift and carry up to ten pounds, walk and sit for twenty to thirty minutes, and stand for only ten to fifteen minutes; that he had shortness of breath; that he was not using his

---

[5]     The Regulations state that "once a [respiratory] disease process is established by appropriate clinical and laboratory findings," "pulmonary function testing is required to assess the severity of the respiratory impairment." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00(A) (2000). The critical spirometric value for assessing disability based on COPD is the $FEV_1$ value, or forced expiratory volume at one second. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.02(A) (2000). The Regulations stipulate that any pulmonary function test resulting in an $FEV_1$ value less than 70 percent of the predicted value must be repeated after administration of an aerosolized bronchodilator to the test subject. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00(E). If such administration occurs, the "dose and name of the bronchodilator should be specified." Id. "If a bronchodilator is not administered, the reason should be clearly stated in the report." Id.

prescribed medication due to financial reasons; that he had hearing loss in the left ear and ringing in both ears for the last several years; that he had no evaluation by a specialist or audiologist; that Advil was the only medication which he was taking; and that he had smoked one-half to one package of cigarettes per day for forty years. On examination, Dr. Hussain reported that Plaintiff's breath sounds were diminished in both lung fields; that Plaintiff did not appear in any acute or chronic distress ; that movements in all Plaintiff's extremities were within normal limits; that his neurological examination was unremarkable; that Plaintiff climbed on the examination table without assistance; that he appeared to need some assistance rising from a squat; that he dressed and undressed, buttoned and unbuttoned his clothes; that he had limited range of motion in his knees, right shoulder, and back; that his gait, posture, and station were normal; that he could heel and toe walk; that he had a positive carpal tunnel sign; that his grip was strong; that he could perform fine finger movements and carry objects; and that his pulmonary function test was normal. Dr. Hussain's impressions included: degenerative joint disease, with pain in the back, shoulders, and feet; right carpal tunnel syndrome; elevated blood pressure; shortness of breath probably from asthma; and hearing loss. Dr. Hussain further reported that Plaintiff needed follow-up for his elevated blood pressure and formal hearing and asthma testing (Tr. 129-30).

In December 2003, Plaintiff underwent further pulmonary function studies. On this date Plaintiff had an FVC of 4.23 (91% of the predicted level) and an FEV1 of 3.54 (96% of the predicted level). (Tr. 119-127). Also, in December 2003, Chul Kim, M.D., reported that Plaitnif's pulmonary function was normal. (Tr. 117).

### IV.

## DECISION OF THE ALJ

The ALJ considered that Plaintiff alleged that he was disabled since July 9, 2003, due to back problems, emphysema, shortness of breath, carpal tunnel, arthritis, and pain in his feet and that at the hearing he added tendonitis in both elbows and loss of hearing mostly in the left ear. The ALJ held the Plaintiff did not have an "impairment or combination of impairments which meet or medically equal the requirements of any section of the Appendix 1 Listing of Impairments." (Tr. 12). The ALJ noted that Plaintiff's complaint, while carefully considered, was not controlling; the "disabling impairment must be supported by at least some objective medial evidence." (Tr. 12).

The ALJ considered that Plaintiff had not sought treatment for his ailments since 2001 and found this absence of treatment to be inconsistent with Plaintiff's complaints. (Tr. 15). Further, the ALJ found the medical evidence did not support Plaintiff's claims of "disabling back problems, emphysema, shortness if breath, carpal tunnel, arthritis, pain in feet, tendonitits in both elbows, and loss of hearing mostly in the left ear." (Tr. at 13). The ALJ found that Plaintiff does have degenerative joint disease of the lumbar spine, but not to the level of disability that would preclude work. The ALJ found it significant that Plaintiff's November 2003 consultative examination was unremarkable neurologically and that during this exam Plaintiff was able to dress/undress himself, climb on the exam table unassisted, lumbar motion to 60 degrees, and heel and toe walk. The ALJ also noted the Plaintiff had only mild limitation of flexion-extension. (Tr. 14-15).

In regard to Plaintiff's complaint of breathing problems the ALJ considered that Plaintiff's October 2001 X-ray showed no acute cardiopulmonary process and showed that his heart was

within normal limits; that pulmonary functioning tests of October 2001 and December 2003 were normal; and that there was no evidence that Plaintiff required treatment for pulmonary problems. (Tr. 11-12, 14). In regard to Plaintiff's complaint of disability due to foot pain, the ALJ noted the 2003 exam revealed a normal gait and that Plaintiff was able to walk heel to toe. The ALJ also noted Plaintiff used no assistive devices, could squat and raise himself, and had not complained to any physician of foot pain. In regard to Plaintiff's contention that he was disabled due to loss of hearing, the ALJ found noteworthy that Plaintiff had not been evaluated by any specialist or audiologist nor was there any documented diagnosis of a hearing problem. (Tr. at 15). In regard to Plaintiff's complaint of carpal tunnel syndrome the ALJ considered that Plaintiff received no further treatment for this condition after he saw Dr. Davis in 2001; that Plaintiff did not report any problem in this regard to Dr. Hussain during the November 2003 consultive examination; and that, although this doctor noted positive carpal tunnel syndrome signs, Plaintiff's grip was strong as were his fine finger movements. (Tr. 14).

The ALJ concluded that Plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, sit and/or walk about 6 hours in an 8-hour work day, push and/or pull, and occasionally climb ladders, ropes, and scaffolds, and stoop. The ALJ further concluded that assuming that Plaintiff is unable to perform his past relevant work he has the residual functional capacity ("RFC") to perform at least the full range of light work. The ALJ concluded, however, that Plaintiff's past relevant work as performed in that national economy is not precluded by his limitations and that Plaintiff's work skills can be applied to meet the requirements of light work activities of other work such as inspector, cashier, and order clerk. (Tr. 18).

# V.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § § 416.920(f), 404.1520(f). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person's with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (holding that the at Step 5 the burden of production shifts to the Commissioner, although the Commissioner is to required to reestablish the RFC which the claimant must prove at Step 4).

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality

of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse

v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that he has a disabling impairment. 42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 849 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 426 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the

national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

# VI.
## DISCUSSION

The issue before the Court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Substantial evidence is that which a reasonable mind might accept as adequate to support the Commissioner's conclusion. See Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissioner's findings from being supported by substantial evidence. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Thus, even if there is substantial evidence which would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of his position. Jones, 86 F.3d at 826.

Plaintiff argues the ALJ's finding that Plaintiff could perform the full range of light work is not supported by substantial evidence. Plaintiff further argues that Plaintiff suffers from a numerous of impairments which in combination with his age, educational background, and past work experience have rendered him physically disabled within the meaning of the Act. Plaintiff contends that the ALJ's finding that he has no non-exertional limitations [6] is not supported by the record; that the ALJ erroneously concluded the Plaintiff's impairments do not meet or surpass one of the impairments listed in the Regulations; that the ALJ improperly discounted Plaintiff's subjective complaints of pain;

---

[6] Plaintiff's brief actually says that the ALJ's finding that Plaintiff did not have exertional limitations is not supported by substantial evidence. Doc. 17 at 2. As the ALJ did find that Plaintiff has exertional limitations the court will assume that Plaintiff meant to reference the ALJ's finding in regard to non-exertional limitations.

and that the ALJ erroneously found that Plaintiff could perform his past work as a production supervisor. Upon reviewing the administrative record as a whole, the undersigned finds that the decision of the ALJ in this matter is supported by substantial evidence for the following reasons.

## A.      The ALJ Properly Discounted Plaintiff's Subjective Complaints:

Plaintiff suggests that the ALJ only considered the absence of objective medical evidence when engaging in his credibility analysis and that this methodology is contrary to case law. Plaintiff's allegation in this regard is without merit as Polaski, 739 F.2d at 1322, holds that in addition to the medical evidence, or absence thereof, the ALJ must consider factors including a claimant's daily activities, medications, and functional restrictions. While the ALJ is bound by the factors noted above in Polaski, the ALJ need not explicitly cite to the case if the ALJ's decisions are supported by substantial evidence. Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273,275 (8th Cir. 1995). In addition, it is not fatal that the ALJ did not  methodically discuss each Polaski factor, as long as the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); Strongson v. Barnhart, 361 F.3d 1066,1072 (8th Cir. 2004). Consistent with Polaski, the ALJ considered the factors set forth in that case for determining the credibility of a claimant.

First, the ALJ also noted that Plaintiff stated during testimony and on his Social Security Application that the only medication which he takes for pain is Advil. The ALJ properly noted that the use of an over-the-counter pain reliever is inconsistent with allegations of completely debilitating pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); Benskin, 830 F.2d 878 (8th Cir.

1987) (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988) (holding that failure to seek aggressive treatment and limited use of prescription medications not suggestive of disabling pain).

Second, the ALJ considered Plaintiff's contention that he did not receive more medical treatment because of a lack of financial resources. The motivation behind the Plaintiff's failure to seek treatment is an issue for the ALJ. Johnson v. Bowen, 866 F.2d 274 (8th Cir. 1989). The ALJ was not convinced by Plaintiff's claim of financial hardship and found significant that Plaintiff made no showing of being denied treatment for lack of payment nor did he show that he made any effort to obtain treatment on an ability to pay basis. In addition, the ALJ noted there was no persuasive evidence that Plaintiff made any effort to seek the aid of any available public or private institution, program, or individual to defray the costs of medical treatment. Finally, the ALJ found relevant that Plaintiff offered no persuasive evidence that he discussed any alternate methods of payment with his treating physicians and Plaintiff was able to afford to smoke one half to one pack of cigarettes a day. Seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). Even assuming that Plaintiff's financial resources were insufficient, failure to seek treatment offered to indigents detracts from a claim that a claimant did not seek medical treatment because of inadequate financial resources. Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999). In light of the above factors upon

which the ALJ relied, the ALJ had substantial evidence upon which to find the Plaintiff assertions of a lack of financial resources were not convincing. Moreover, the ALJ's decision in this regard is consistent with the Regulations.

Third, the ALJ considered that Plaintiff stated in a Claimant Questionnaire that he was able to pay bills, use a checkbook, complete a money order, count change, do very minor home repairs, go to the bank, post office and grocery store, cook breakfast, and go fishing once in awhile. The ALJ also considered that Plaintiff spent his day fixing coffee, watching television, fixing breakfast, eating, and walking outside for awhile; that he read magazines and newspapers; that he had a valid driver's license, could drive and went into town "maybe twice a week about three miles"; and that Plaintiff appeared to have written out all the answers on the Claimant Questionnaire. While a Plaintiff need not be bedridden before he is determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that Plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F. 2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff v. Barnhart, 356 F.3d 926, 930(8th Cir.2005) (citing Riggins, 177 F.3d at 692). The ALJ had a reasonable basis for finding that the Plaintiff's daily activities adequately discredit his

complaints of debilitating disability.

Fourth, the ALJ considered that Plaintiff did not seek treatment for carpal tunnel after he was told to wear a splint, that there was no evidence he was required to seek treatment for pulmonary problems, and that there was no evidence that Plaintiff sought evaluation by a specialist or audiologist in regard to his loss of hearing in the left ear. The court notes that there is no record of Plaintiff seeing his treating doctor, Dr. Davis after 2001. Other than December 2003 pulmonary testing reports, Plaintiff's medical records after 2001 are from consulting and examining doctors, not treating doctors. Seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). As such, the ALJ properly considered that Plaintiff received limited medical treatment. The court further finds that the ALJ's decision in regard to his credibility findings is supported by substantial evidence on the record as a whole.

**B.** **The ALJ's Finding that Plaintiff has the Residual Functional Capacity for Light Work:**

Plaintiff challenges the ALJ's determination that Plaintiff's residual functional capacity ("RFC") included the ability to perform light work. The ALJ concluded that even if Plaintiff could not work as a production supervisor as this job is normally performed in the national economy, he has the RFC to engage in the full range of light work. The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 416.967(a). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983

WL 31251,*6 (SSA).

RFC is defined as what an individual can still do despite his or her limitations and is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." 1996 WL 374184 at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physician's and others, and an individual's own description of his limitations.'" Tucker v Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). "Some medical evidence. . . must support the determination of the claimant's [residual functional capacity], and the ALJ should obtain medical evidence that addresses that claimant's ability to function in the workplace." Lauerv v. Apfel, 254 F.3d 700, 704 (8th Cir. 2001) (internal citations omitted).

Upon determining Plaintiff's RFC the ALJ also considered Plaintiff's prior application for disability which was denied by an ALJ on July 8, 2002, and considered that in reaching the conclusion that Plaintiff was not disabled the prior ALJ relied on Plaintiff's RFC as determined by Dr. Bowman. The ALJ found that Plaintiff's RFC as determined by Dr. Bowman on January 28, 2002, is presently applicable in view of a lack of further physical deterioration demonstrated in the current medical record. Dr. Bowman's residual functional estimate stated the Plaintiff was capable of occasionally

lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing or walking, with normal breaks, for six hours in an eight hour workday, and sitting for six hours in an eight hour day, and that he had unlimited ability to push and pull with his upper and lower extremities including the operation of hand and/or foot controls. (Tr. 274). Further, the ALJ, as discussed above, did not fully accept the credibility of the Plaintiff's claims of debilitating limitations.

Moreover, the ALJ considered the medical records as more fully set forth above including Plaintiff's lack of treatment for carpal tunnel syndrome after January 2001, normal pulmonary functioning tests, a normal chest X-ray, no diagnosis or clinical evidence of a medically determinable impairment in his elbows, no evidence of a medically determined impairment regarding Plaintiff's feet, no complaint to a physician regarding foot pain, and no documented evidence for treatment of Plaintiff's hearing problem. In regard to Plaintiff's joint disease of the lower spine, the ALJ considered the reports of Dr. Davis although the record does not include any reports of Dr. Davis which are dated prior to the ALJ's decision of July 8, 2003. As stated above, the decision of the prior ALJ is *res judicata* in regard to Plaintiff's condition prior to July 9, 2003. The ALJ also considered Dr. Hussain's report and noted that Dr. Hussain found Plaintiff's neurological examination unremarkable, reported that Plaintiff had degenerative joint disease with pain in back, but further reported that Plaintiff did not have muscle spasm, that he had only mild limitation of flexion-extension and that his movements were unremarkable. The ALJ concluded that Plaintiff has degenerative joint disease of the lumbar spine and mild arthritis in the right pinkie finger but that he does not have an impairment or combination of impairments listed in or medially equal to one listed in Appendix I, Subpart P, Regulations No. 4. The court finds, based on the above cited evidence, including the RFC

determined by Dr. Bowman, Dr. Hussain's report, Plaintiff's own description of his impairments, and the absence of medical records to support Plaintiff's claims of disability, that the ALJ finding that Plaintiff has the RFC for light work is supported by substantial evidence on the record as a whole. The court further finds, considering Plaintiff's medical records and the ALJ's credibility findings set forth above that the ALJ's decision that Plaintiff's does not have an impairment or combination of impairments listed in or medically equal to one listed in the Regulations is supported by substantial evidence.

**C.    Plaintiff's Remaining Arguments:**

Plaintiff contends that he established his inability to return to his past relevant work, and thus the burden shifted back to the Secretary to show other jobs in the economy that the Plaintiff is capable of performing.  Indeed, the ALJ concluded that Plaintiff could not perform his job as a production supervisor as he performed that job but that Plaintiff could perform that job as performed in the national economy. Thus, even assuming, arguendo, this required the ALJ to show that such jobs existed in the national economy, relying upon the testimony of the VE, the ALJ noted that there were 16,000 such jobs in Missouri and 700,000 in the national economy.  The ALJ further considered, in the alternative, based on the testimony of the VE, that even if Plaintiff is limited to sedentary work and cannot work as a production supervisor, he could transfer his skills to perform semiskilled work as an inspector, cashier, and order clerk and that there are approximately 30,000 of these jobs available in Missouri and over one million in the national economy.

In regard to Plaintiff's claim that the ALJ incorrectly found that he did not have non-exertional impairments, the court notes that Dr. Bowman found that Plaintiff had no visual, communicative, or

environmental limitations; that although Dr. Hussain reported in November 2003 that Plaintiff had hearing loss and shortness of breath from asthma, he further reported that Plaintiff did not appear in any acute or chronic distress in regard to his lung function and that his pulmonary function tests were normal; and that subsequently in December 2003 Dr. Kim reported that Plaintiff had normal pulmonary functioning.[7] As such, the court finds that the ALJ's failure to find that Plaintiff has non-exertional limitations is supported by substantial evidence.

Although the ALJ relied on the testimony of the VE the court notes that he was not required to as he did not find that Plaintiff had non-exertional impairments. Resort to the Medical-Vocational Guidelines is only appropriate when there are no non-exertional impairments that substantially limit the ability of Plaintiff to perform substantially gainful activity. Indeed, once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove there is work in the economy that the claimant can perform. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). If the claimant is found to have only exertional impairments, the Commissioner may meet this burden by referring to the Medical Vocational Guidelines. Robinson, 956 F.2d at 839. If, however, the

---

[7]     SSR 83-10, 1983 WL 31251, at * 6, defines a non exertional impairment as "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities." SSR 83-10, 1983 WL 31251, at *7, defines non exertional limitation as "[a]n impairment-caused limitation of function which directly affects capability to perform work activities other than the primary strength activities." SSR 83-10, 1983 WL 31251, at * 6, defines non exertional restriction as an "impairment-caused need to avoid one or more environmental conditions in a workplace."

claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. Id.

Additionally, 20 C.F.R. § 404.1560 states in relevant part in regard to a claimant's ability to perform past relevant work:

(b) Past relevant work ...

(2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. ...

(c) Other work.

(1) If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity

assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

As such, the ALJ properly relied upon the testimony of the VE upon concluding that Plaintiff could work as a production supervisor as that job is performed in the national economy. Moreover, the ALJ properly included those limitations which he found credible in the hypothetical posed to the VE upon which hypothetical the ALJ relied. The Eighth Circuit holds that a hypothetical question is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. <u>Hunt v. Massanari</u>, 250 F.3d 622, 625 (8th Cir. 2001); <u>Sobania v. Secretary of Health & Human Services</u>, 879 F.2d 441, 445 (8th Cir. 1989); <u>Roberts v. Heckler</u>, 783 F.2d 110, 112 (8th Cir. 1985). For all of the foregoing reasons, the court finds that the decision of the ALJ is supported by substantial evidence and that Plaintiff's contentions to the contrary are without merit.

**VII**.
**CONCLUSION**

This court finds that the decision of the ALJ is supported by substantial evidence on the record as a whole, and that the Commissioner's decision, therefore, should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Brief in Support of Complaint is **DENIED**; [16, 17]

**IT IS FURTHER ORDERED** that the relief sought by Defendant Jo Anne B. Barnhart in her Brief in Support of Answer is **GRANTED**; [21]

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED** in its entirety, with prejudice; [1]

**IT IS FINALLY ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum and Order.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of February, 2006.